FIELDEN ESTES, Appellant, v. JACOB FRY, Respondent.

St. Louis Court of Appeals, May 4, 1886.

1. PRACTICE—WAIVER OF ERRORS—EVIDENCE.—In an action to recover the balance due on certain notes, where the answer pleads payment generally, an objection that evidence of a number of fractional payments was improperly admitted can not be made for the first time in an appellate court.

2. EVIDENCE—PROOF OF PAYMENT.—A number of payments, extending over a period of several years, being credited on the notes in suit, and the defendant claiming other payments not so credited, it is proper to permit him to supplement his testimony by proof of circumstances tending to show their probable dates and amounts.

APPEAL from the St. Charles County Circuit Court, W. W. EDWARDS, Judge.

*Affirmed.*

W. H. MORROW, for the appellant.

W. H. BIGGS, M. G. REYNOEDS, and D. A. BALL, for the respondent.

ROMBAUER, J., delivered the opinion of the court.

The plaintiff instituted an action against the defendant on two promissory notes, one bearing date December 1, 1866, the other, April 29, 1874. Each note bears interest from date at the rate of ten per cent. per annum, and contains a clause, that if the interest is not paid annually it shall become principal, and bear the same rate of interest. The petition states that the notes are entitled to a number of credits, reciting them, and that the balance over and above such credits remains unpaid. The action was brought February 5, 1883. The petition does not state, except by inference, the amount remaining unpaid on the notes. Taking the plaintiff's

statement in the petition, as to credits, as a basis, and it would appear that the entire amount claimed by him as still due on the two notes, at the date of the institution of the suit, was over seventeen hundred dollars.

The answer of the defendant admits the execution of the notes, but denies that any part thereof remains unpaid, and avers that long prior to the institution of the suit they were fully paid and discharged. This was denied by the reply.

The cause was tried by a jury who found on the issue of payment for the defendant.

The plaintiff, appealing, now complains that the answer is insufficient, because it fails to give the various dates of the alleged payments, and further complains that the court erroneously permitted the defendant to introduce testimony of a number of partial payments, in the course of many years, under an answer averring payment generally. As the answer was neither objected to, nor sought to be reformed in any manner, in the court below, and as no objection was made to the introduction of any testimony in support of the answer, on the ground now urged, the plaintiff is not in a position to urge these complaints here as a ground for reversal.

The only objections which are properly saved are the objections to the admission of testimony offered by the defendant, which the plaintiff claims was incompetent and irrelevant.

On that subject the record recites that the defendant offered evidence tending to prove the averments of his answer, and among other witnesses the defendant himself testified, in response to questions by his counsel, as follows:

Q. "State if you sold a crop of wheat to E. F. Mathews. If so, what year, what you received for it, and what you did with the proceeds."

A. "I sold a crop of wheat to E. F. Mathews. I can neither read nor write, and, therefore, kept no memorandum of the date or amount. I think the crop brought

about four hundred dollars. Will not be certain as to the amount. I can not remember definitely the year. I think it was in 1868. I paid the amount I received from Mathews to plaintiff, and he has given me no credit for it on my notes."

Q. "Did you sell a crop of wheat to Mathews in 1869 or 1870, if so, state when you sold it, the amount you received, and what you did with the money."

A. "I sold my wheat crop to Mathews in 1869 or 1870. I think it was in 1869. I think the crop amounted to about seven hundred dollars. On the same day that Mathews paid me, I paid plaintiff five hundred and fifty dollars of the money, for which he has given me no credit. I have no means of knowing the date of the payments by Mathews or the amount of the sale. I have to rely entirely upon my memory as to dates and amounts."

Q. "Did you at any time sell a crop of tobacco to A. Tinsley & Co., and if so, state date of sale, amount, and what you did with the proceeds."

A. "I sold a crop of tobacco to A. Tinsley & Co., but I can not state the year or the amount. Whatever I received I paid to plaintiff on my notes here sued on and he failed to give me credit."

To the foregoing questions the plaintiff objected.

The defendant then introduced E. F. Mathews, and asked him the following questions and elicited the following answers:

Q. "State if you shipped or bought a crop of tobacco from defendant, and if so, state the date of the sale and the amount paid by you to Fry."

A. "I shipped a crop of tobacco for defendant August 6, 1868. I paid defendant two hundred and fifty dollars, the balance due him after deducting grocery bill I had against him."

Q. "State if you shipped a crop of wheat for defendant; if so, give the date of shipment and the amount paid by you to defendant."

A.  "I shipped a crop of wheat for defendant in 1869.  I paid him therefor six hundred and eighty dollars, August 14, 1869, as shown by my books."

To each of these questions the plaintiff objected, and his objections were overruled.

The defendant then read in evidence, over the objections of the plaintiff, the deposition of Sam Reid, which is as follows :

Q.  "Where do you reside, and in what capacity were you employed in 1872 ? "

A.  "I reside in Louisiana, Missouri, and was in the employ of A. Tinsley & Co., manufacturers of tobacco, as book-keeper."

Q.  "Do you know of A. Tinsley & Co. buying leaf tobacco of Jacob Fry in 1872 ; if so, state as near as you can the amount paid for the same and to whom paid."

A.  "Yes, sir.  We received of Jacob Fry, May 13, 1872, tobacco amounting to one hundred and thirty-four dollars ; May 17, tobacco amounting to ninety dollars ; May 17, tobacco amounting to $78.18, and paid to Jacob Fry."

Q.  "Did A. Tinsley & Co. ever buy any tobacco after this from Jacob Fry ? "

A.  "Not that I have any knowledge of."

Q.  "Did you examine the books of A. Tinsley & Co., to see if said firm had purchased tobacco from Fry after 1872 ? "

A.  "Yes, sir."

Q.  "What did you find ? "

A.  "I found nothing."

The plaintiff claims that the above testimony of the defendant was himself improperly admitted, because it was elicited in response to leading questions, and because the defendant's answers, that no credit was given to him for the amounts thus paid, were incompetent, as the credits were in writing indorsed upon the notes.

The objection to the questions, that they were leading, was not distinctly made, but would furnish no ground for disturbing the judgment, even if it had been so made. Whether leading questions should be permitted to be put, rests to a great extent in the discretion of the trial judge, and we are not prepared to say that that discretion was abused in the present instance.

The defendant, as the record shows, was an old and illiterate man, relying as to these credits entirely on his unaided memory. The claims sued on were of long standing. For a period of eight years between 1873 and 1881, there was not a credit on the older note, nor did it contain any credit in either of the years 1868, 1869, 1870, and 1872. So that the defendant's statement, that he received no credit for any payments made in those years, was borne out by the notes themselves, and could not possibly have prejudiced the defendant, on the ground that it contradicted a written instrument.

As to the testimony of Mathews and Reid the same observations will apply. In many instances it is next to impossible to prove payments made, ten or fourteen years ago, by direct, minute, and exact testimony. Nor need this be done, as payment may in some cases be presumed, from lapse of time, from the course of dealing between the parties, from the solvency of the debtor where the claim remains unpressed for a long period. 2 Greenl. on Evid. 528; *Church v. Fagin*, 43 Mo. 123, 126. It was essential for the defendant, in this instance, to prove not only the payments, but as near as may be their exact date, so as to show that they were not the payments for which he had already received credits upon the notes, but other and additional payments. Not having any memoranda as to exact dates or amounts, he referred to the money paid as derived from certain transactions, and then proved by the parties with whom he had these transactions, the amounts derived therefrom, and the date when derived.

We must hold, therefore, that under the particular circumstances of this case, the testimony complained of was admissible. Its weight and sufficiency were questions for the jury.

The plaintiff was a witness in his own behalf. After the close of his testimony, the defendant introduced evidence tending to impeach the plaintiff's reputation for truth and veracity, and, among other witnesses, one McElroy was sworn, and testified in answer to a question put to him by the defendant's counsel as follows:

Question. "Do you know the plaintiff's general reputation for truth and veracity in the neighborhood where he lives?"

Answer. "Yes, I have heard some say that it was not good, and some that it was good. He always treated me fairly in my dealings with him. I borrowed some money from him at one time. He calculated the interest. He is a money lender."

The plaintiff objected to the testimony as to his loaning money for the reason that the same was incompetent and irrelevant, but the court overruled the objection.

That this objection was well taken is incontestable, but how the plaintiff could possibly have been injured by the admission of this testimony is not apparent. The plaintiff's calling was foreign to the issue, but there is nothing in the record to show that such a calling was not thoroughly honorable, or that it was calculated to throw any discredit on a man or his testimony; all the less so, since the witness expressly states, that in the only transaction which he ever had with the plaintiff in that calling, he was treated fairly by the plaintiff. The error, therefore, in admitting this testimony, was entirely harmless.

The only other objection is, that the court of its own motion asked one of the defendant's impeaching witnesses, whether he would believe the plaintiff on oath,

from what he knew of his reputation, to which the witness answered he would not. As no objection was made or exception saved, either to question or answer in this case, it is wholly useless to enter the much litigated discussion, whether or no questions of that character are proper.

The foregoing embodies all the objections brought here for review by this appeal. The charge of the court to the jury was not excepted to, but a careful examination of it discloses that it was fair, full, and unobjectionable.

It results that no errors being shown warranting a reversal the judgment of the trial court must be affirmed. It is so ordered, all the judges concurring.